IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ARVEN MALCOM, JR., | ) | |
| | ) | |
| Petitioner, | ) | 4:04cv3243 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| ROBERT HOUSTON, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court for decision on the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("§ 2254 petition") filed by Arven Malcom, Jr.  The petitioner is presently serving a prison sentence of 10 to 30 years in state custody for a conviction of first degree sexual assault of a minor, Dani V.  The facts of the petitioner's case are set forth in State v. Malcom, 583 N.W.2d 45 (Neb. App. 1998) (No. A-97-798), *review overruled* (Sep. 1, 1998) ("Malcom I")[1] and State v. Malcom, 675 N.W.2d 728 (Neb. App. 2004) (No. A-02-621), *review overruled* (Jul. 8, 2004) ("Malcom II").  The petitioner was convicted in November of 1993 and began to serve his sentence on January 7, 1994.

_____

[1]Malcom I was the decision of the Nebraska Court of Appeals on the petitioner's direct appeal granted as a result of his first postconviction action and consequent resentencing.  The petitioner's "trial counsel failed to prosecute a direct appeal from his conviction and [original] sentence. Subsequently, [the petitioner] filed an application for postconviction relief, asserting that this amounted to ineffective assistance of counsel. The district court agreed and sustained [the postconviction] application on that basis. The court then vacated the original sentence, held a resentencing hearing, and sentenced [the petitioner] to the same sentence as was originally imposed.  It is apparent ... that the district court was using the resentencing as a means of renewing [the petitioner's] right to file a direct appeal." State v. Malcom, 583 N.W.2d 45, 48 (Neb. App.1998) ("Malcom I").

In Malcom II, on appeal from the denial of a later motion for postconviction relief, the appellate court reversed and remanded to the district court for a new evidentiary hearing on matters unrelated to the § 2254 claims in the above-entitled case.

1

## § 2254 Claims

The petitioner alleges the following habeas corpus claims (summarized):

Claim 1.     Trial counsel entirely failed to function as the petitioner's advocate; thus, the standard of presumed prejudice articulated in United States v. Cronic, 466 U.S. 648 (1984), should apply to the claims of ineffective assistance of trial counsel, rather than the standard requiring actual prejudice required by Strickland v. Washington, 466 U.S. 668 (1984);

Claim 2.     The petitioner was denied his right to conflict-free representation of trial counsel;

Claim 3.     The petitioner received ineffective assistance of appellate counsel on direct review in 1997-98; and

Claim 4.     The petitioner received ineffective assistance of trial counsel by virtue of his attorneys' failure to investigate and present at trial the only theory of the defense which would have been plausible.

## Standard of Review

Consideration of the petitioner's § 2254 claims is circumscribed by 28 U.S.C. § 2254(d), which limits this court's review of habeas corpus claims adjudicated on the merits in the state courts.   28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), states:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Within the meaning of 28 U.S.C. § 2254(d)(1), "[a] state-court decision is contrary to [the Supreme Court's] clearly established precedents if it applies a rule that contradicts

2

the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005).  Similarly, "[a] state-court decision involves an unreasonable application of ... clearly established precedents if the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner."  Id.

28 U.S.C. § 2254(d)(2) must be read together with 28 U.S.C. § 2254(e)(1), which states:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

As explained by the Supreme Court, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)."  Miller-El v. Cockrell, 537 U.S. 322, 324 (2003).

## Applicable Law

The petitioner's claims in this case were adjudicated on the merits by the Nebraska appellate courts.  The "first step, then, in evaluating a challenge to the state court's application of the law is to determine what, if anything, the Supreme Court has said on the subject.  From there, we proceed to take a careful look at the decision of the state court." Kinder v. Bowersox, 272 F.3d 532, 537-38 (8th Cir. 2001), citing Williams v. Taylor, 529 U.S.

3

362, 405 (2000).

## Ineffective Assistance of Trial Counsel

Although citing state law, the Nebraska Court of Appeals in Malcom I applied the standard articulated in Strickland v. Washington, 466 U.S. 668 (1984), to the petitioner's claims of ineffective assistance of counsel.  "Ineffective assistance under Strickland is deficient performance by counsel resulting in prejudice." Rompilla v. Beard, 545 U.S. 374, 380 (2005).  "In order to overturn a conviction on grounds of ineffective assistance of counsel, the [petitioner] must show that his trial counsel's performance fell below the standard of customary skill and diligence that a reasonably competent attorney would display and that there is a reasonable probability that the outcome would have been different but for the substandard actions of counsel." Rousan v. Roper,  436 F.3d 951, 959 (8th Cir. 2006), citing Strickland, 466 U.S. at 694.

If Strickland is the controlling "clearly established Federal law" referenced in 28 U.S.C. § 2254(d)(1), the petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  If counsel's performance was not deficient or if the petitioner suffered no prejudice, the court need not address the other part of the test.  Williams v. Locke, 403 F.3d 1022, 1025 (8th Cir. 2005) ("we need not ask whether [the] lawyer's performance was deficient if we can clearly determine that no prejudice resulted from [the] lawyer's alleged error").

The petitioner entered a plea of not guilty to a charge of statutory rape, i.e., that on or about the 5th day of July, 1993, he subjected another person to sexual penetration while

he was nineteen years of age or older[2] and the other person was less than sixteen years of age. See Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1989); Malcom I, 583 N.W.2d at 47. Even though the minor's consent to the sexual activity or the petitioner's mistaken belief as to the minor's age do not constitute defenses to the crime of statutory rape, the petitioner's trial counsel questioned him before the jury on those issues and elicited incriminating testimony.

As a result, the Nebraska Court of Appeals agreed with the petitioner that his trial attorney had rendered ineffective assistance of counsel by doing so.  See Malcom I, 583 N.W.2d at 48-49:

> From our review of the record, we can ascertain that Malcom's trial counsel apparently was proceeding under the belief that certain other sexual assault charges could have been lesser-included offenses to the charge of first degree sexual assault and that consent and mistake of age would be defenses to those lesser-included offenses.  As a result, Malcom's trial counsel did elicit testimony and question witnesses regarding those defenses.

> The law in Nebraska concerning lesser-included offenses has undergone significant changes ....

> The statutory elements of first degree sexual assault as charged in the present case are (1) sexual penetration when (2) the actor is 19 years of age or older and (3) the victim is less than 16 years old. § 28-319(1)(c).  We are unable to find any "lesser" offense the statutory elements of which are such that it is impossible to commit a first degree sexual assault as charged in this case without also committing the lesser offense ....

> Because the first element of the lesser-included offense test is not satisfied, it is apparent that Malcom's trial counsel was wrong in proceeding to defend Malcom as if a lesser-included offense instruction could be feasible.   The law of lesser-included offenses has been firmly established and well documented since the Supreme Court's decision in State v. Williams, [243 Neb. 959, 503 N.W.2d 561 (1993)] ....

---

[2]The petitioner was 49 years old, and Dani V. was 15 years old on July 5, 1993.

5

We conclude that Malcom's trial counsel performed deficiently when she refused to heed the trial court's repeated warnings that consent or mistake of age is not a defense to the crime charged and that there are no lesser-included offenses.   As such, we conclude that the first prong of the ineffectiveness of counsel test has been established in this case.

However, the Court of Appeals concluded that the petitioner had failed to establish prejudice as a result of counsel's deficient performance because of the substantial independent evidence produced by the prosecution, including the petitioner's own admissions to others, none of which derived from the mistakes of the petitioner's attorney. The independent evidence of the petitioner's guilt left little or no reasonable probability that the outcome of the petitioner's trial would have been different absent the substandard actions of his trial attorney.  See Malcom I, 583 N.W.2d at 49-50:

> Our review of the record in this case indicates that the State produced testimony from two witnesses, besides the victim, who both testified that Malcom had spoken to them and had told them that he had "sex" with Dani V. This testimony, when read together with the testimony of the victim and other testimony concerning the ages of the victim and Malcom, was sufficient to support the verdict and was not adduced through the deficient performance of Malcom's counsel.   Accordingly, there is evidence sufficient that it cannot be said, to a reasonable probability, that the result would have been different had defense counsel not performed deficiently ....

> Because the State adduced independent, admissible testimony that Malcom had spoken to other witnesses and had confessed to having sex with this 15-year-old girl, Malcom has not demonstrated that he was prejudiced by the deficiencies of his counsel's performance.   Malcom's assigned error regarding ineffective assistance of counsel is without merit.

In Malcom II, the Nebraska Court of Appeals reiterated: "The ineffectiveness of trial counsel during Malcom's trial virtually leaps from the pages of the bill of exceptions.   It is apparent from the record of this trial that trial counsel did not appreciate the fundamental and well-established law applicable to a statutory rape case."   Malcom II, 675 N.W.2d at 735.   Nevertheless, the Court of Appeals explicitly ruled in the postconviction appeal, as

6

it had implicitly ruled on direct appeal, that the Strickland requirement of actual prejudice applied, rather than the standard of prejudice per se discussed in United States v. Cronic, 466 U.S. 648 (1984). Furthermore, "given the strength of the evidence, we cannot say that there was a reasonable probability that Malcom would have been acquitted by the jury but for the fact that he took the stand and admitted the acts which conclusively established his guilt." Malcom II, 675 N.W.2d at 735, 736.

The petitioner argues that the Nebraska appellate courts erred and misapplied federal Supreme Court precedents by inquiring into prejudice at all. According to the petitioner, this is a case in which the standard of presumed prejudice discussed in United States v. Cronic, 466 U.S. 648 (1984), should apply to his claims of ineffective assistance of counsel, as opposed to the inquiry into actual prejudice required by Strickland.

In Cronic, the U.S. Supreme Court created a narrow exception to the principles enunciated in Strickland, and established that in limited circumstances a per se presumption of prejudice will apply. See also Florida v. Nixon, 125 S.Ct. 551, 563 (2004):

> Cronic recognized a narrow exception to Strickland's holding that a defendant who asserts ineffective assistance of counsel must demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defense. Cronic instructed that a presumption of prejudice would be in order in "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U.S., at 658 .... The Court elaborated: "[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." Id., at 659 ...; see Bell v. Cone, 535 U.S. 685 ... (2002) (for Cronic's presumed prejudice standard to apply, counsel's "failure must be complete").

The Supreme Court identified three situations involving the right to counsel in circumstances "so likely to prejudice the accused that the cost of litigating their effect in a

7

particular case is unjustified."  United States v. Cronic, 466 U.S. at 658-59.  In those situations, prejudice will be presumed, as opposed to an inquiry into prejudice on a case-by-case basis.  "Most obvious, of course, is the complete denial of counsel" [or] "if the accused is denied counsel at a critical stage of his trial."  Id. at 659.

"Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable."  Id., citing (as an example) Davis v. Alaska, 415 U.S. 308 (1974) (in which the trial court issued a protective order barring defense counsel from effective cross-examination of a key prosecution witness).

The third kind of case is exemplified by Powell v. Alabama, 287 U.S. 45 (1932), "in which the surrounding circumstances made it so unlikely that any lawyer could provide effective assistance that ineffectiveness was properly presumed without inquiry into actual performance at trial."  United States v. Cronic,  466 U.S. at 661.  In other words, under conditions so adverse that competent counsel could not have overcome the obstacles and assisted the accused effectively, a petitioner will be spared the burden of demonstrating that his attorney could not help him and that he was prejudiced thereby.

In recent years, the U.S. Supreme Court has reversed several decisions in which the lower courts erroneously applied Cronic, exceeding the narrow scope of the exception for presumed prejudice based on an attorney's failure to test the prosecutor's case.  That is the exception invoked by the petitioner, who alleges that his trial attorney failed to subject the prosecution to "meaningful adversarial testing."

In Bell v. Cone, 535 U.S. 685 (2002), the Supreme Court reversed a Sixth Circuit decision for applying Cronic.  The appeals court held that counsel had failed to subject the

8

prosecution to meaningful adversarial testing at the penalty phase of a capital murder case because counsel failed to present certain mitigating evidence and waived final argument. The jury then sentenced the petitioner to death.  The Supreme Court reversed, however, because the Sixth Circuit had misunderstood that failure to subject the prosecution's case to meaningful adversarial testing must be entire and complete, not periodic or "at specific points.  For purposes of distinguishing between the rule of <u>Strickland</u> and that of <u>Cronic</u>, this difference is not of degree but of kind."  <u>Bell v. Cone</u>, 535 U.S. at 696-97.  A partial or intermittent failure of representation does not warrant presumed prejudice.

Similarly, in <u>Florida v. Nixon</u>, 543 U.S. 175 (2004), the Florida Supreme Court erred by applying the <u>Cronic</u> standard in determining whether counsel's failure to obtain the defendant's express consent to a strategy of conceding guilt in a capital trial automatically constituted ineffective assistance.  "A presumption of prejudice is not in order based solely on a defendant's failure to provide express consent to a tenable strategy counsel has adequately disclosed to and discussed with the defendant."  <u>Id</u>. at 179.  The attorney's concession did not function as the equivalent of a guilty plea.  The accused "retained the rights accorded a defendant in a criminal trial."  The State still had to present "competent, admissible evidence establishing the essential elements of the crimes with which [the accused] was charged."  The defense could cross-examine witnesses for the prosecution and endeavor to exclude prejudicial evidence.  The attorney's concession did not hinder the defendant's right to appeal.  <u>Id</u>. at 188.  "The Florida Supreme Court's erroneous equation of [the attorney's] concession strategy to a guilty plea led it to apply the wrong standard in determining whether counsel's performance ranked as ineffective assistance. The court first presumed deficient performance, then applied the presumption of prejudice

9

that <u>United States v. Cronic</u>, 466 U.S. 648 ... (1984), reserved for situations in which counsel has entirely failed to function as the client's advocate. The Florida court therefore did not hold [the petitioner] to the standard prescribed in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which would have required [the petitioner] to show that counsel's concession strategy was unreasonable." <u>Florida v. Nixon</u>, 543 U.S. at 189.[3]

None of the narrow exceptions enumerated in <u>Cronic</u> applies to the petitioner's case.  See also <u>Bell v. Cone</u>, 535 U.S. 685, 694-96, reiterating the three exceptions outlined in <u>Cronic</u>.  Instead, the general rule as articulated in <u>Strickland</u> applies, and the Nebraska appellate courts did not produce a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  See generally <u>United States v. Gonzalez-Lopez</u>, 126 S.Ct. 2557, 2563 (2006):   "The requirement that a defendant show prejudice in effective representation cases arises from the very nature of the specific element of the right to counsel at issue there - *effective* (not mistake-free) representation.  Counsel cannot be 'ineffective' unless his mistakes have harmed the defense (or, at least, unless it is reasonably likely that they have). Thus, a violation of the Sixth Amendment right to *effective* representation is not 'complete' until the defendant is prejudiced.  See <u>Strickland</u>, supra, at 685 ...."   (Emphasis in original.)

Thus, 28 U.S.C. § 2254(d)(1) precludes this court from granting relief on the petitioner's first § 2254 claim that the Nebraska appellate courts should have presumed

---

[3]As the Supreme Court pointed out in <u>Florida v. Nixon</u>, 543 U.S. 175, 190 (2004): "We illustrated just how infrequently the 'surrounding circumstances [will] justify a presumption of ineffectiveness' in <u>Cronic</u> itself.  In that case, we reversed a Court of Appeals ruling that ranked as prejudicially inadequate the performance of an inexperienced, under-prepared attorney in a complex mail fraud trial.  466 U.S., at 662, 666 ...."

prejudice under the Cronic standard for ineffective assistance of counsel. The petitioner's first § 2254 claim is denied.

In his fourth § 2254 claim, the petitioner raises a litany of deficiencies in his trial counsel's performance which he contends prejudiced the outcome of his trial and which he alleges should have been the subject of an evidentiary hearing on postconviction review. In Malcom II, the petitioner's postconviction appeal, and again in this court, the petitioner asserts that his trial counsel failed to investigate and present at trial the only plausible defense theory, i.e., that the petitioner had not subjected Dani V. to sexual penetration. He also argues that counsel failed to challenge the insufficiency of the Information for failure to state Dani V.'s date of birth; failed to file a pretrial motion pursuant to the "injury" exception of the rape shield law to establish that a vaginal injury sustained by Dani V. occurred in a prior sexual assault by another person; failed to file a pretrial motion for psychiatric evaluation of Dani V. to obtain evidence of her "deep seated emotional disorders" which bear on her ability to tell the truth (filing no. 1 at 25); failed to obtain a long list of various items of evidence and testimony which the petitioner contends could have been elicited from various witnesses; and failed to make various objections and introduce impeaching evidentiary matters.

A charge which tracks the language of the statute identifying the offense is a sufficient charging document. Hamling v. United States, 418 U.S. 87, 117 (1974). Because the Information charged that Dani V. was, as in the language of Neb. Rev. Stat. § 28-319(1)(c), "less than sixteen years of age," her specific date of birth was not required for a sufficient Information. (See filing no. 17, Information filed 8/5/93, included in district court Transcript of Case No. 21382 in State v. Malcom, A-02-621, "Malcom I.")

11

As for whether the postconviction court should have held a hearing on the specific claims of inadequate representation by the petitioner's trial attorney, this court does not review defects in the petitioner's state postconviction proceedings. 28 U.S.C. § 2254 affords habeas corpus relief to "a person in custody pursuant to the judgment of a State court [who] is in custody in violation of the Constitution or laws ... of the United States." Id. § 2254(a).  See, e.g., Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir.) (a claim regarding an infirmity in state postconviction proceedings "is collateral to appellant's conviction and detention, and is therefore not cognizable in a 28 U.S.C. § 2254 petition"), cert. denied, 495 U.S. 936 (1990).

Thus, relief under § 2254 is available for violations of federal law leading to a criminal conviction in state court or on direct appeal, but not for violations which occur on collateral review.   See, e.g., Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir.) (claim of denial of due process in state post-conviction court provided no grounds for federal habeas relief), cert. denied, 527 U.S. 1056 (1999); Wright v. Angelone, 151 F.3d 151, 159 (4th Cir. 1998) (errors and irregularities in state post-conviction proceedings are not cognizable on federal habeas review);  Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir.) (insofar as an alleged constitutional error relates to the state's post-conviction remedy rather than to the judgment of conviction, the alleged error states no cognizable federal habeas claim), cert. denied  525 U.S. 1024 (1998); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997) ("errors concerning [state post-conviction] process are not cognizable in federal habeas proceedings"), cert. denied, 525 U.S. 903 (1998); Gee v. Groose, 110 F.3d 1346, 1351-52 (8th Cir. 1997), citing Jolly v. Gammon, 28 F.3d 51 (8th Cir.), cert. denied, 513 U.S. 983 (1994), quoting Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir.1990): "[A]n infirmity in

12

a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition;" <u>Steele v. Young</u>, 11 F.3d 1518, 1524 (10th Cir. 1993) (challenge to state "post-conviction procedures on their face and as applied to [petitioner] would fail to state a federal constitutional claim cognizable in a federal habeas proceeding"); <u>Smith v. Lockhart</u>, 882 F.2d 331, 334 (8th Cir.1989) (failure by state postconviction court to hold a hearing and provide written findings not cognizable in federal habeas corpus action), <u>cert. denied</u>, 493 U.S. 1028 (1990); <u>Bryant v. Maryland</u>, 848 F.2d 492, 492 (4th Cir. 1988) ("claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief").

As for the various deficiencies in trial counsel's performance, the Nebraska Court of Appeals in both <u>Malcom I</u> and <u>Malcom II</u> agreed with the petitioner that his trial attorney rendered ineffective assistance.  Nevertheless, the appellate courts found no reasonable probability that the outcome of the trial would have been different absent trial counsel's deficiencies.

Regarding the events of July 5, 1993, Sonya Wilson testified that the petitioner told her a few days later that he had indeed had sex with Dani V., but that he believed Dani was 19 years old and had consented.   (Filing no. S17B, BOE[4] at 54.)   Mindy Kruse testified that the petitioner told her, too, that: "I had sex with Dani.  But she was totally willing."  (<u>Id</u>. at  33.)   Dani V.'s testimony certainly incriminated the petitioner, established penetration and proved her exact age.  (<u>Id</u>. at 76-88.)  The testimony of other witnesses corroborated and supported many of the details and surrounding circumstances described by Dani V.

---

[4]Bill of Exceptions, Trial before the Honorable John P. Murphy, Dawson County District Judge, 11/16/93.

and Kruse.  Other evidence established the petitioner's age.

As discussed above, the Court of Appeals in <u>Malcom I</u> found substantial independent, admissible evidence of the petitioner's guilt in the record, including the petitioner's own confessions, so that even if his trial counsel had performed competently, the outcome probably would not have differed.  In <u>Malcom II</u>, 675 N.W.2d at 736, the Court of Appeals reiterated:

> [I]f we remove Malcom's self-incriminating testimony from the record, we find that there was still uniform testimony from a variety of sources which established the time, place, and circumstances when the victim was a guest at a party hosted by Malcom.  Accordingly, opportunity for the sexual encounter was proved.  Further, two witnesses testified that Malcom admitted to them that he had had sex with the victim, and of course, the victim testified to the illegal acts.  Therefore, given the strength of the evidence, we cannot say that there was a reasonable probability that Malcom would have been acquitted by the jury but for the fact that he took the stand and admitted the acts which conclusively established his guilt.  Accordingly, this claim [ineffective assistance of trial counsel] must fail on the prejudice prong.

The decision that the petitioner failed to show prejudice from his attorney's weaknesses was not objectively unreasonable in light of the record.  28 U.S.C. § 2254(d)(2), (e)(1).  The petitioner's fourth § 2254 claim is denied.

## Conflict of Interest

On July 9, 1993, the Dawson County Court appointed P. Stephen Potter of the Dawson County Public Defender's office, assisted by Deputy Public Defender Barbara Brogan, to represent the petitioner in preliminary proceedings in the county court.  On July 19, 1993, Public Defender Potter filed an Application for Defendant's Attorney to Withdraw as Attorney of Record, stating, without details, that "the attorney of record has a conflict of interest."  The County Court found no conflict.  Subsequently, on October 1, 1993, the

14

petitioner was arraigned in district court, pleading not guilty to an Information charging first degree sexual assault. Deputy Public Defender Brogan represented the petitioner at trial, and a jury found him guilty. The petitioner would impute Potter's alleged conflict of interest to Brogan also, as they both served as members of the same Public Defender's office.

The petitioner contends that prejudice must be presumed from the county court's refusal to appoint substitute counsel pursuant to Potter's avowed "actual" conflict of interest. The petitioner cites, for example, Flanagan v. United States, 465 U.S. 259, 267 (1984), for the principle that no showing of prejudice need be made to obtain reversal when trial court denies counsel's request to be replaced because of a conflict of interest, since prejudice to the defense is presumed. Believing that no prejudice need be shown, i.e., attributed to the alleged conflict, the petitioner has shown none.

However, Flanagan v. United States, dealt with questions relating to the appealability of orders relating to disqualification of criminal defense counsel for conflicts of interest arising out of joint representation of co-defendants. The case certainly does not stand for the proposition that just because an attorney announces any sort of conflict of interest, the attorney must be replaced. In fact, in Flanagan, the defendants resisted the disqualification of their attorneys. The law as announced by the U.S. Supreme Court is much more limited than the petitioner advocates.

"An actual conflict ... is a conflict of interest that adversely affects counsel's performance." Mickens v. Taylor, 535 U.S. 162, 172 n. 5 (2002). "An attorney's performance must be adversely affected by the conflict of interest before there is a constitutional violation .... **If a trial court improperly requires joint representation of co-defendants over timely objection, reversal is automatic**. See Holloway v. Arkansas,

15

435 U.S. 475, 487-90 ... (1978).   **In all other conflict situations, there is no Sixth Amendment violation, and thus no reversal, absent a showing that an actual conflict of interest adversely affected counsel's performance.**   See Mickens v. Taylor, 535 U.S. 162, 167-74 ... (2002)."   Hunter v. Secretary, Dept. of Corrections, 395 F.3d 1196, 1200 (11th Cir.), cert. denied, 126 S.Ct. 120 (2005)  (emphasis added) .

In this case, accordingly, no prejudice is to be presumed, and the petitioner has not shown that the alleged conflict (which arose out of a disagreement over financial and plea arrangements involving Potter's representation of the petitioner in a prior unrelated misdemeanor case) actually affected the adequacy of either Potter's or Brogan's performance on the petitioner's behalf in the present case.  The petitioner had to show actual prejudice from the purported conflict, and he has not done so.  In fact, he has failed to demonstrate any connection between the prior representation and the events in this case.

Similarly, the petitioner's appellate counsel on direct appeal did not render ineffective assistance by failing to raise the purported conflict claim.  The Nebraska appellate courts gave passing reference to this claim in Malcom II, 675 N.W.2d at 738, denying the claim "insofar as Malcom advances this as an independent ground for post-conviction relief."  The petitioner has not shown that the state courts arrived at a decision contrary to clearly established Supreme Court law, or that the state courts unreasonably applied Supreme Court decisions to the facts of the petitioner's case,  28 U.S.C. § 2254(d)(1).  The record provides no support for the view that the Nebraska courts reached an unreasonable determination of any material fact on the petitioner's second and third §

16

2254 claims, 28 U.S.C. § 2254(d)(2) and (e)(1).  The petitioner's second and third § 2254 claims are denied.

The petitioner raised additional matters in his postconviction proceedings in <u>Malcom II</u> related to the plea bargaining process and Deputy Public Defender Brogan's friendship with the family of Dani V., insofar as that friendship may have caused or contributed to the alleged failure of Brogan to investigate and plea bargain adequately on behalf of the petitioner.  In <u>Malcom II</u>, the Nebraska Court of Appeals remanded those issues to the district court, and the petitioner did not include claims on those subjects in this habeas corpus action. (See filing no. 52, petitioner's Reply Brief, at 1-3, explaining that he limited his § 2254 petition exclusively to his fully exhausted claims.)  Thus, only the § 2254 claims presented to this court have been reviewed and decided in this Memorandum and Order.

THEREFORE, IT IS ORDERED:

1.      That the Petition for Writ of Habeas Corpus filed by Arven Malcom, Jr. is denied and dismissed with prejudice; and

2.      That judgment will be entered accordingly.

DATED this 21st day of December, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge